<u>NOT FOR PUBLICATION</u>

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

JANET L. DAMM,                                      Civ. No. 09-02286 (RMB)

                    Plaintiff,

        v.


COMMISSIONER OF SOCIAL SECURITY,                    OPINION


                    Defendant.


 Appearances:

        Philip Wolf
        Wolf & Brown, LLC
        228 Kings Highway East
        Haddonfield, NJ 08033
             Attorney for Plaintiff

        Jennifer Susan McMahon
        Office of the U.S. Attorney
        Social Security Administration
        26 Federal Plaza
        Room 3904
        New York, NY 10278-0004
             Attorney for Defendant

**BUMB,** UNITED STATES DISTRICT JUDGE:

**I.    Introduction**

Janet L. Damm ("Plaintiff") brings this appeal seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Social Security Disability ("SSD") and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act ("the Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  For the reasons set forth below, the Court must remand this matter to permit the Administrative Law Judge ("ALJ") to clarify his findings.

## II.  Background

### A.    Procedural Background

Plaintiff applied for disability benefits on June 24, 2005, claiming disability as of April 27, 2005.  Administrative Record ("R.") at 57.  The claim was denied on November 15, 2005, and again on March 7, 2006.  R. at 52, 48.  Upon Plaintiff's written request, a hearing was held before ALJ Mark G. Barrett on August 6, 2007.  R. at 19.  On September 27, 2007, the ALJ issued a decision denying Plaintiff's claim.  R. at 16-27.  The Appeals Counsel denied Plaintiff's claim on March 16, 2009.  R. at 5-7.  On May 20, 2009, Plaintiff filed the above-captioned action in this Court.  Dkt. Ent. 1.

### B.    Evidence in the Record

At the time of her hearing, Plaintiff was fifty-seven-years old.  R. at 355.  Her disabled husband and grandson, with whom

2

she resided, were seventy-one and twelve-years old respectively.[1]
R. at 355-56.  Plaintiff had a high school diploma, driver's
license and a twenty-year employment history as a telephone
operator for an answering service.  R. at 356-58.  She stopped
full-time work in April 2005 after suffering a heart attack.  R.
at 358-59.

### 1.  Medical History

On or about May 6, 2005, Plaintiff sought treatment at
Underwood Memorial Hospital ("Underwood") in Woodbury, New
Jersey upon experiencing a "mental status change" following
teeth extraction.  R. at 173.  She had elevated blood sugar and
was diagnosed with diabetic ketoacidosis and ventricular
tachycardia.  R. at 174.  Plaintiff was transferred to Our Lady
of Lourdes Hospital ("Lourdes") in Camden, New Jersey for
cardiac catheterization and had a defibrillator installed.  R.
at 230, 359.  Records from Lourdes showed Plaintiff to have
insulin-dependent diabetes for thirty years and that, at the
time of her May 18, 2005 discharge, "[h]er blood sugar was still
not well controlled."  R. at 216.  She was sent home with
prescriptions for Keflex, Prevacid, Toprol, baby aspirin and
Humalog Insulin Lispro.  Id.

---

[1] Plaintiff's husband is a double amputee who is confined to
a wheelchair; her grandson suffers from Asperger's Syndrome.  R.
at 137, 355, and 374.

A month later, on June 24, 2005, Plaintiff applied for SSD benefits, complaining of diabetes, heart and back[2] problems.  R. at 57.  Despite these ailments, Plaintiff began working fourteen hours a week in November 2005.  R. at 361.  Her hours had increased to twenty-one by the time of her administrative hearing.  Id.

Plaintiff returned to Underwood on March 4, 2006, when she was found to be unresponsive due to low blood sugar.  R. at 283. She was diagnosed with hypoglycemic reaction, given glucose and was discharged.  R. at 286-87, 292.  Plaintiff was seen again at Underwood on December 18, 2006, complaining of weakness and diarrhea.  R. at 299.  She left without treatment against medical advice, R. at 299-300, 304, but returned later the same day and was diagnosed with hyperglycemia and dehydration.  R. at 305-06.  She was treated with glucose and fluids and again left the hospital against medical advice.  R. at 310.

Plaintiff was evaluated by Steven Klein, D.O., on October 20, 2005 for the New Jersey Division of Disability Determination Services.  R. at 248-50.  Dr. Klein noted that Plaintiff experienced some back pain and physical limitation.  R. at 249.

---

[2] In 1992, Plaintiff apparently injured her lower back in a motor vehicle accident.  R. at 249.  A June 2002 magnetic resonance imaging (MRI) report of Plaintiff's right shoulder suggested a tendon tear and degenerative joint disease.  R. at 328-29.  A January 2003 MRI of Plaintiff's spine showed a C6-7 disc bulge.  R. at 326-27.

A month later, S. Schoen, M.D., a New Jersey Division of
Disability Determinations consultant, completed a Physical
Residual Functional Capacity Assessment ("RFC") for Plaintiff.
R. at 257-65.  Dr. Schoen found that Plaintiff could
occasionally lift twenty pounds, frequently lift ten pounds, and
sit, stand or walk for six hours in an eight-hour workday.  R.
at 258.  He further found Plaintiff to have minimal postural
limitations and no manipulative, visual or communicative
limitations.  R. at 259-62.  Dr. Schoen attributed Plaintiff's
complaints of fatigue, sweating, urinary frequency and nocturia
to poorly controlled diabetes.  R. at 263.  He concluded that
Plaintiff's "[a]llegations of functional limitation [were] not
fully consistent with [the medical examiner's report]."  Id.

Linda Aquilino, D.O., Plaintiff's treating physician,
completed a RFC evaluation for Plaintiff on April 6, 2006.  R.
at 266-69.  She treated Plaintiff from August 10, 2005 through
December 28, 2005 and from February 22, 2006 through March 21
2007.  R. at 271-82; 339-47.  Dr. Aquilino diagnosed Plaintiff
as suffering from chronic lower back pain, type 2 insulin-
regulated diabetes and hypertension.  R. at 266.  She described
Plaintiff's lower back pain as occurring daily with long periods
of standing or sitting.  R. at 267.

Dr. Aquilino concluded that Plaintiff could stand or walk
for two hours in an eight hour workday and sit for four hours.

<u>Id.</u>  She characterized Plaintiff's ability "to tolerate customary work pressures" and "impairment in ability to concentrate" as "mild."  R. at 267-68.  Dr. Aquilino expected that Plaintiff would need three, unscheduled breaks of roughly ten to fifteen minutes per eight-hour workday; was apt to have "good" and "bad" days with regard to her functionality; and would likely be absent from work approximately two days per month as a result of her functional impairments.  R. at 268.  Dr. Aquilino also noted that Plaintiff's medication caused her fatigue.  R. at 269.

Dr. Klein examined Plaintiff again in June 2007.  R. at 313.  He noted that Plaintiff experienced mild pain of her cervical spine, which occurred on extension and on bilateral side bending, and reported pain in Plaintiff's lumbosacral spine on extension and bilateral rotation.  R. at 314.  He diagnosed Plaintiff with the following conditions:  mild hypertension, insulin-dependent diabetes mellitus, and gastroesophageal reflux disease.  R. at 315.

On June 9, 2007, Dr. Klein completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)."  R. at 319-24.  He opined that, due to her diabetes and lumbosacral spine pain, Plaintiff could "occasionally" lift up to ten pounds and "frequently" carry this weight.  R. at 319.  She could sit for one hour, stand for thirty minutes, walk for

fifteen minutes at a time without interruption and, in an eight hour work day, sit for up to three hours, stand for up to one hour and walk for up to thirty minutes.  R. at 320.  Dr. Klein also noted limitations in Plaintiff's use of her hands and feet, reporting that Plaintiff could never climb stairs, ladders, balance, stoop, kneel, crouch or crawl as part of her work activities.  R. at 321-22.  Dr. Klein concluded that Plaintiff could not travel without a companion for assistance, walk a block on an uneven surface or climb a few steps without use of a rail.  R. at 324.  Plaintiff could, however, perform activities like shopping, ambulate without a wheelchair or cane, use public transportation, prepare simple meals, care for her personal hygiene and handle files or paperwork.  Id.

## 2. The August 6, 2007 Hearing

At her hearing, Plaintiff testified that she worked for an answering service for twenty years until her April 2005 heart attack required her to leave the position.  R. at 358-59.  She explained that she suffered from diabetes, lower back pain, chest pain, migraines and characterized herself as a "brittle diabetic," meaning that she could not control her blood sugar. R. at 360.  Despite these conditions, Plaintiff returned to work in November 2005, eventually working up to twenty-one hours a week, although "calling out a lot."  R. at 361-62.  Plaintiff admitted to keeping her hours below the level that would

preclude her from collecting disability benefits but explained that she "really couldn't work any more even if [she] had to." R. at 363.

Plaintiff described occasional weakness in her arms that prevented her from typing on a computer and required her to "get up and move around." R. at 363-64. She reported the following limitations: she could walk half a block, stand for no more than fifteen minutes, sit for only an hour and could not bend from the waist. R. at 364-65. She could, however, grocery shop with help, carry about ten pounds with two hands and climb stairs "very carefully." R. at 365. She also reported doing laundry and "quick cooking." R. at 373-74.

Plaintiff described chronic pain in her back and fatigue and dizziness caused by her medication. R. at 365-68. She also described migraines, which would last for anywhere from twenty-four hours to three days, two to three times a month. R. at 377. Plaintiff testified that she "called out at least two days a month, sometimes more" and would sometimes leave early when her diabetes caused her blood sugar to drop or spike. R. at 375-76. She described her chest pain as occurring "when things [were] very busy at work and hectic" and lasting fifteen to twenty minutes. R. at 376. Her back pain, which shot up her spine to her neck, required her "to get up and stretch." R. at 377.

8

The ALJ also heard testimony from vocational expert Matthew G. Treihart.  Mr. Treihart reviewed Plaintiff's demographic information and work history; he concluded that Plaintiff's past work qualified as sedentary and semi-skilled, such that the skills obtained were transferable within the same industry.  R. at 379-80.

The ALJ asked Mr. Treihart to consider a hypothetical worker of Plaintiff's age, education, training, experience and exertional limitations as described in Dr. Schoen's RFC.  R. at 381.  These limitations included

> [an] individual [who,] due to diabetes and tachycardia . . . , can occasionally . . . lift and carry 20 pounds; could frequently lift and carry only up to 10 pounds; could stand and/or walk with normal breaks for a total of six hours in an eight hour day; sit with normal breaks for a total of six hours in an eight hour day; unlimited ability to push and pull; posturally . . . the hypothetical individual can never . . . climb ladders, ropes and scaffolds; . . . can never balance . . . [and] must avoid concentrated exposure to extreme heat, extreme cold, wetness, and humidity . . . .

R. at 381-82.  Mr. Treihart concluded to a reasonable degree of professional certainty that an individual with these restrictions could return to Plaintiff's past relevant work.  R. at 382.

Mr. Treihart next considered the same hypothetical person with the limitations described in Dr. Aquilino's RFC.  Id. These limitations included:

> [an] individual [who] could occasionally lift and/or carry
> up to 10 pounds . . . standing and walking . . . limited to
> two hours in an eight hour day; sitting  . . . limited to
> four hours in an eight hour day . . . .  The person would
> have to take, in an eight hour workday, three breaks, three
> times, and each one would be from 10 to 15 minutes; and
> [the person] would be absent from work about two days a
> month and this would be due to fatigue and tiredness . . .
> related to the impairments . . . .

R. at 382-83.  Mr. Treihart opined that a person with these
limitations could not return to work due to "somewhat excessive
breaks and absenteeism."[3]  R. at 384.  He considered a limit of
two breaks and one absence a month as the industry limit for the
position at issue.  Id.  He further opined that a person with
the restrictions listed by Dr. Aquilino could not be successful
at any other job in the regional or national economy.  Id.

     Finally, Mr. Treihart considered a hypothetical person with
the limitations described in Dr. Klein's June 3, 2007 report.
R. at 385.  This hypothetical person:

> could occasionally lift up to 10 pounds . . . ; could carry
> up to 10 pounds frequently . . . and this is due to lumbar
> spine problems; standing and walking is limited at one time
> without interruption . . . to one hour sitting, standing is
> 30 minutes . . . , but walking is 15 minutes at a time . .
> . ; in an eight hour day the hypothetical individual could
> sit for three hours; stand for one hour, but walk for 30
> minutes; the hypothetical individual using the right or
> left hand could occasionally reach, including overhead,
> handle, finger, feel, push, and pull; . . . foot controls
> both right and left could be operated occasionally for one-

---

[3] The ALJ characterized Dr. Aquilino's report as to the
quantity of breaks and leave necessary as "subjective" and noted
that he would only consider this information as evidence of pain
and not as "objective findings."  R. at 382-83.

third of the time; no postural limitations . . . ;
environmentally . . . the person could . . . not tolerate
any of these . . . : unprotected heights, moving
mechanical parts, operating a motor vehicle, humidity, and
wetness, dust, odors, fumes, pulmonary irritants, extreme
heat, extreme cold, vibrations, and noise limit was limited
to quiet such as working in . . . a library . . . .
Certain activities the person can't do . . . : travel
without a companion for assistance, walk a block at a
reasonable pace on rough or uneven surfaces, climb a few
steps at a reasonable pace with the use of a hand-rail . .
. .

R. at 385-86.

Mr. Treihart concluded within a reasonable degree of
professional certainty that someone with these limitations could
not return to past relevant work and could not perform any jobs
in the regional or national economy.  R. at 386.

### 3.   The ALJ's Decision

On September 27, 2007, the ALJ issued a decision concluding
that Plaintiff was not disabled for the claimed period.  R. at
19-27.  After determining that the Plaintiff met the insured
status requirements through March 31, 2010, the ALJ found that
Plaintiff had not engaged in substantial gainful activity since
April 27, 2005.  R. at 21.  The ALJ noted, however, that
"although the claimant's wages have been barely below the
substantial gainful activity level . . . it does not indicate
that she is not able to do substantial gainful activity."  Id.
The ALJ inferred this finding based on Plaintiff's testimony
that she returned to the same work in November 2005, following

her heart surgery, "has continuously worked since that time" and required no special accommodations other than being allowed to take more frequent breaks.  R. at 21-22.

Upon his consideration of the medical evidence, the ALJ determined the Plaintiff suffered from the following severe combination of impairments:  diabetes mellitus, ventricular tachycardia with defibrillator implantation and hypertension.[4] R. at 22.  Nonetheless, the ALJ concluded that Plaintiff "did not have an impairment or combination of impairments that me[t] or medically equal[ed] the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526."  R. at 24.

The ALJ concluded, upon "consideration of the entire record," that Plaintiff "ha[d] the residual functional capacity to perform the full range of light work . . . ."  Id.  Despite finding that Plaintiff's medical impairments could produce the symptoms described, the ALJ rejected Plaintiff's descriptions of the intensity, persistence, and limiting effects of her impairments as "not entirely credible."  R. at 25.  The ALJ thus determined that Plaintiff's impairments did not prevent her from returning to her past work as an answering service telephone operator.  R. at 27.

---

[4] The ALJ did not list back pain as one of Plaintiff's impairments.  He did, however, consider Plaintiff's back pain in his RFC analysis.  See R. at 22, 26.

## II.  Discussion

### A.    Standard of Review

When reviewing a final decision of the Social Security Commissioner, the Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000).  "Substantial evidence" means, "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  Where the ALJ's findings of fact are supported by such evidence, the Court is bound by the Commissioner's findings, "even if [it] would have decided the factual inquiry differently."  Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)).  Thus, this Court must "review the evidence in its totality, but where it is susceptible of more than one rational interpretation, the Commissioner's conclusion must be upheld."  Ahearn v. Comm'r of Soc. Sec., 165 Fed.Appx. 212, 215 (3d Cir. 2006) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984); Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986)).

The Commissioner, however, "must adequately explain in the record his reason for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F.Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  Said differently,

> [u]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the Court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Ed. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)); see also Guerrero v. Comm'r of Soc. Sec., Civ. No. 05-1709, 2006 WL 1722356, at *3 (D.N.J. June 19, 2006)(stating that it is the ALJ's responsibility "to analyze all the evidence and to provide adequate explanations when disregarding portions of it"), aff'd, 249 Fed. Appx. 289 (3d Cir. 2007).

While the ALJ must review and consider pertinent medical evidence, review all non-medical evidence and "explain [any] conciliations and rejections," Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 122 (3d Cir. 2000), "[t]here is no requirement that the ALJ discuss in [his] opinion every tidbit of evidence included in the record." Hur v. Barnhart, 94 Fed.Appx. 130, 133 (3d Cir. 2004); see also Fargnoli, 247 F.3d at 42 ("[a]lthough we do not expect the ALJ to make reference to every relevant

treatment note in a case where the claimant . . . has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Overall, the Court must set aside the Commissioner's decision if the Commissioner did not take the entire record into account or failed to resolve an evidentiary conflict. Schonewolf v. Callahan, 972 F.Supp. 277, 284-85 (D.N.J. 1997) (quoting Gober, 574 F.2d at 776).

In addition to the substantial evidence inquiry, this Court must also review whether the administrative determination was made upon application of the correct legal standards. Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983). The Court's review of legal issues is plenary. Sykes, 228 F.3d at 262; Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).

**B.   Disability Defined**

The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a
> disability only if his physical or mental impairment or
> impairments are of such severity that he is not only unable
> to do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national
> economy, regardless of whether such work exists in the
> immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he
> applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i)-(v).  In Plummer, 186 F.3d at 427-28, the Third Circuit set out the Commissioner's inquiry at each step of this analysis:

> In step one, the Commissioner must determine whether the
> claimant is currently engaging in substantial gainful
> activity.  20 C.F.R. § 1520(a).  If a claimant is found to
> be engaged in substantial activity, the disability claim
> will be denied.  Bowen v. Yuckert, 482 U.S. 137, 140
> (1987).  In step two, the Commissioner must determine
> whether the claimant is suffering from a severe impairment.
> 20 C.F.R. § 404.1520(c).  If the claimant fails to show
> that her impairments are "severe," she is ineligible for
> disability benefits.
> In step three, the Commissioner compares the medical
> evidence of the claimant's impairment to a list of
> impairments presumed severe enough to preclude any gainful
> work.  20 C.F.R. § 404.1520(d).  If a claimant does not
> suffer from a listed impairment or its equivalent, the
> analysis proceeds to steps four and five.  Step four
> requires the ALJ to consider whether the claimant retains
> the residual functional capacity to perform her past
> relevant work.  20 C.F.R. § 404.1520(d).  The claimant
> bears the burden of demonstrating an inability to return to
> her past relevant work.  Adorno v. Shalala, 40 F.3d 43, 46
> (3d Cir. 1994).
> If the claimant is unable to resume her former
> occupation, the evaluation moves to the final step.  At

16

this stage, the burden of production shifts to the
Commissioner, who must demonstrate the claimant is capable
of performing other available work in order to deny a claim
of disability.  20 C.F.R. § 404.1520(f).  The ALJ must show
there are other jobs existing in significant numbers in the
national economy which the claimant can perform, consistent
with her medical impairments, age, education, past work
experience, and residual functional capacity.  The ALJ must
analyze the cumulative effect of all the claimant's
impairments in determining whether she is capable of
performing work and is not disabled.  See 20 C.F.R. §
404.1523.  The ALJ will often seek the assistance of a
vocational expert at this fifth step.  See Podedworny v.
Harris, 745 F.2d 210, 218 (3d Cir. 1984).

**C.   Plaintiff's Arguments on Appeal**

Plaintiff argues five issues before this Court:  (1) the
ALJ erred in discounting Plaintiff's allegations of pain despite
finding that Plaintiff's medical conditions could be expected to
produce the symptoms alleged; (2) the ALJ erred in discounting
the findings of the consultative examiner; (3) the ALJ erred in
failing to credit the opinion of Plaintiff's treating physician
regarding Plaintiff's impairments; (4) the ALJ erred in finding
that Plaintiff was not disabled because she did not follow
treatment due to economic reasons; and (5) the ALJ erred in
finding that Plaintiff could return to her past work based on
her part-time work with accommodations.  Defendant disputes
these arguments.

**1.   The ALJ's Credibility Determination**

Plaintiff argues that the ALJ erred in discounting the severity of Plaintiff's symptoms.  Upon review of the record, the ALJ found that

> the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

R. at 25.  He further determined "that the claimant has some subjective limitations, but not of the intensity, frequency, or duration alleged."  Id.

A claimant's "subjective complaints of pain [must] be seriously considered, even where not fully confirmed by objective medical evidence."  Green v. Schweiker, 749 F.2d 1066, 1068 (3d Cir. 1984) (citing Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981)).  And where a claimant's pain is supported by medical evidence, it "should be given great weight" and may not be discounted by the ALJ absent contrary medical evidence.  Id.

Here, the Court finds Plaintiff's allegations regarding the intensity and limiting effect of her medically determinable impairments were supported, at least in part, by objective medical evidence in the record.  The ALJ derived from Plaintiff's testimony that "she can lift and carry up to ten pounds, sit for one hour, walk for ½ block, and stand for fifteen minutes, and cannot bend over, but can stoop, squat and

can climb stairs." R. at 25. Dr. Klein's 2007 medical evaluation determined that Plaintiff can occasionally lift, and frequently carry, up to ten pounds; she can sit for one hour without interruption, stand for thirty minutes and cannot walk a block at a reasonable pace on an uneven surface. R. at 319-24.

The ALJ, however, assigned little weight to Dr. Klein's RFC. R. at 26. He concluded it to be "far out of proportion of the findings from his examination and with the preponderance of the medical evidence in the record," as well as Plaintiff's own functionality report. R. at 26. Unfortunately, although this statement indicates that the ALJ weighed Dr. Klein's report against the other record evidence, the ALJ's reasoning for rejecting Dr. Klein's assessment is simply not apparent from this statement. "An ALJ 'may not reject [a physician's findings] unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected.'" Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993) (quoting Kent v. Schweiker, 710 F.2d 110, 115 n.5 (3d Cir. 1983)).

The ALJ did not address how Dr. Klein's conclusions differed substantively from his RFC. Dr. Klein's 2007 opinion letter accompanying his RFC reported mild pain and limitation caused by Plaintiff's cervical spine, as well as pain and

19

limitation caused by Plaintiff's lumbosacral spine.  R. at 314.
Dr. Klein made the following findings:

> [Plaintiff's] cervical spine demonstrates full flexion with
> mild pain of her cervical spine which recurred on extension
> restricted to 40 degrees.  Bilateral rotation was limited
> to 60 degrees also with pain of her cervical spine which
> reappeared on bilateral side bending just to 30 degrees.
> There was no spasm noted and there was no tenderness on
> palpation.
>
> . . .
>
> [Plaintiff's] lumbosacral spine demonstrates forward
> flexion limited to 35 degrees with pain of her lumbosacral
> spine which recurred on extension to 10 degrees and on
> bilateral rotation and side bending also to 10 degrees.
> Sitting root testing was negative for low back pain.  There
> was no spasm noted of her lumbosacral spine.[5]

R. at 314.  It is unclear whether these findings differ so
substantially from Dr. Klein's RFC to warrant their rejection by
the ALJ.

By contrast, although the ALJ rejected Dr. Klein's findings
as "far out of proportion . . . with the preponderance of the
medical evidence in the record," Plaintiff's other RFC
evaluations do not appear to conflict with Dr. Klein's findings.
Dr. Schoen noted that Plaintiff had "[d]iscomfort on lumbar
spine and rotation," and Dr. Aquilino reported that Plaintiff
had "[l]ow back pain, daily back pain . . . with long standing

---

[5] In 2005, Dr. Klein reported that sitting root testing was
positive for low back pain and noted "left sided lumbosacral
spine spasm."  R. at 249.

20

and sitting," that she "requires medication for low back pain"
and that she would need three 10-15 minute breaks to "relieve
low back pain."[6]  R. at 259; 267-68.  In 2005, Dr. Schoen opined
that Plaintiff could sit for six hours in a normal, eight-hour
work day; in 2006, Dr. Aquilino reported that Plaintiff could
sit for only four; and in 2007, Dr. Klein found Plaintiff
capable of three hours in a day, one hour at a time.  R. at 258,
267, 320.

    The ALJ also discounted Plaintiff's alleged symptoms based
on what he considered discrepancies in the record regarding
Plaintiff's functional abilities.  Specifically, he compared
Plaintiff's testimony at the August 6, 2007 hearing with
Plaintiff and her husband's responses on the "Functional
Assessment Questionnaire" and "Function Report Adult – Third
Party" (hereafter "Function Reports") completed two years prior
on July 27, 2005.  R. at 25; see R. at 88-103.  The ALJ
particularly focused on Plaintiff's statements that she took
care of her disabled husband and disabled grandson, completed

---

    [6]  The ALJ stated that Dr. Aquilino found that Plaintiff's
"back caused only mild limitations."  R. at 26.  This statement
does not appear to find support in the record.  Dr. Aquilino
characterized the "[d]egree of impairment in the patient's
ability to tolerate customary work pressure in a work setting"
and the "[d]egree of impairment in ability to concentrate and
attend to a task over a two-hour period" as "mild."  R. at 267
(emphasis added).  By contrast, she described Plaintiff's back
pain as "chronic" and noted that her pain required medication.
R. at 267-68.

21

household chores, prepared meals and shopped for groceries.  R. at 25.  He compared Plaintiff's Report to her testimony that she could do laundry, "quick cooking," and take care of her personal needs, but that her husband does most household chores.  Id.

Unlike the ALJ, the Court does not understand Plaintiff's Function Report to differ substantively from her testimony.  The only difference appears to be whether Plaintiff or her husband completed household chores.  But even if Plaintiff was capable of performing household chores, her ability to do so would not necessarily prevent a finding of disability.  See, e.g., Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988) (noting that an ALJ could not ignore medical evidence of impairment based solely on claimant's ability to perform limited household chores).

Moreover, Social Security Ruling ("SSR") 96-7p directs that "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time, and this may explain why the individual does not always allege the same intensity, persistence, or functional effects of his or her symptoms."  1996 WL 374186, at *5.  For this reason, an "adjudicator will need to review the case record to determine whether there are any explanations for any variations in the individual's statements about symptoms and their effects."  Id. Here, Plaintiff's testimony regarding her household limitations

finds support in a July 10, 2007 letter her husband wrote
explaining that Plaintiff's "household duties have diminished"
and that he does "all housework except laundry and cooking most
meals."  R. at 141.

### 2.    The RFC Determination

Upon rejecting Dr. Klein's findings, and upon consideration
of the other record evidence, the ALJ concluded that Plaintiff
was capable of performing "light work," i.e., sitting, standing
or walking for six hours out of an eight hour work day.  See 20
C.F.R. § 404.1567(b).  To reach this determination, however, the
ALJ was required to reject not only Dr. Klein's evaluation, but
Dr. Aquilino's evaluation as well.  Of course, under the
treating physician doctrine, "a court considering a claim for
disability benefits must give greater weight to the findings of
a treating physician than to the findings of a physician who has
examined the claimant only once or not at all."  Mason, 994 F.2d
at 1067.  It is unclear why the ALJ credited Dr. Schoen's
evaluation, which found Plaintiff capable of sitting for six
hours, over Dr. Aquilino's finding that Plaintiff could sit for
only four hours.

The Court also questions the ALJ's determination that
Plaintiff returned to the same work, under the same conditions,
as prior to her heart surgery.  R. at 25.  The ALJ asked
Plaintiff if she understood what he meant when he questioned if

23

she returned to work under the "same conditions," i.e., "[i]n other words you were sitting down taking these messages doing exactly the same thing, right?"  R. at 361.  Plaintiff answered in the affirmative but clarified that her employer "had to tolerate [her] getting up from [her] computer a lot more and taking more breaks."  Id.

Plaintiff's testimony is supported by a July 2007 statement given by her office manager, which stated that Plaintiff's "health problems ha[d] exacerbated in the past five years."  R. at 142.  Plaintiff's manager observed that Plaintiff needed "more frequent calling out due to [Plaintiff's] health issues" and that Plaintiff "spends a lot of time away from her desk tending to these various situations."  Id.  Moreover, Plaintiff's treating physician opined that Plaintiff would need three, ten to fifteen minute breaks throughout the course of the average workday.[7]  R. at 268.

---

[7] The Court is mindful of Defendant's argument that Dr. Aquilino's form report provided no explanation as to why Plaintiff would require roughly two absences per month or three ten to fifteen minute breaks per day.  Def.'s Br. at 13.  Unexplained opinion findings are not entitled to substantial evidentiary weight.  See Mason, 994 F.2d at 1065 ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.").  It appears reasonable, however, that Dr. Aquilino's findings are based on her assessment of Plaintiff's back pain, which is memorialized in both Dr. Aquilino's form report and treatment notes.  See R. at 270-82.  This issue is best addressed by the ALJ on remand.

The Court also notes that prior to her 2005 heart surgery, Plaintiff worked full time, i.e., seven and a half hours per day, five days a week.  Pl. Br. at 5; R. at 86-87.  Upon her return in November 2005, Plaintiff eventually worked up to twenty-one hours a week.  R. at 361-62.  Given the significant drop in hours, and the ALJ's finding that Plaintiff had not engaged in substantial gainful activity since April 27, 2005, the Court further questions whether Plaintiff can be said to have returned to work "under the same conditions."  R. at 21.

In sum, because the ALJ's reasons for rejecting Plaintiff's allegations regarding the intensity and limiting affects of her medically determinable impairments are not apparent from the ALJ's decision, the Court cannot fulfill its "'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'"  Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979) (quoting Gober v. Mathews, 574 F.2d 772, 776 (3d. Cir. 1978)).  The Court must remand this matter to permit the ALJ to clarify his findings in light of what appears to be conflicting evidence in the record.  See Fargnoli, 247 F.3d at 42 ("Where there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and will vacate or remand a case where such an explanation is not provided.").

### 3.   Plaintiff's Ability to Perform Past Relevant Work

Plaintiff also disputes the ALJ's determination that her past relevant work as a telephone operator for an answering service "does not require the performance of work-related activities precluded by the claimant's residual functional capacity."  R. at 26.  As noted, the ALJ determined that Plaintiff had the capacity to perform a "full range of light work."  Because the RFC evaluations in the record differ as to Plaintiff's abilities, this Court must remand for further clarification of the ALJ's RFC finding.  But given that the ALJ classified Plaintiff's past work as "sedentary" and "semi-skilled," the Court will consider whether substantial evidence in the record exists to support the ALJ's finding that Plaintiff is capable of performing sedentary work.

The determination that a claimant can perform past relevant work, and is therefore not disabled, is made by comparing the claimant's residual functional capacity with the physical and mental demands of the kind of work the claimant has completed in the past.  20 C.F.R. § 404.1560(b); Burnett, 220 F.3d at 120.  The ALJ must:  (1) make specific findings of fact as to the claimant's residual functional capacity; (2) make findings of the physical and mental demands of the claimant's past relevant work; and (3) compare the residual functional capacity to the past relevant work.  Burnett, 220 F.3d at 120.

26

There is conflicting evidence in the record regarding Plaintiff's ability to sit, stand and walk.  Although the ALJ determined that Plaintiff retained the functional capacity to sit, stand or walk for six hours in an eight hour work day, a finding supported by Dr. Schoen's examination, other record evidence suggests that Plaintiff could not sit for longer than three or four hours.  R. at 258, 267, 320.  Indeed, Dr. Klein opined that Plaintiff could not sit for longer than one hour at a time.

> "Sedentary" work is defined in the regulations:
>
> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).  The ALJ asked the vocational expert to consider whether a hypothetical person with Plaintiff's limitations could return to past relevant work in a sedentary, semi-skilled position under the limitations reported by Dr. Schoen, Dr. Aquilino and Dr. Klein.  With regard to the limitations described by Dr. Schoen, which were adopted by the ALJ, the expert responded in the affirmative.  The expert did not find that a person with the limitations described by Dr. Aquilino or Dr. Klein could return to sedentary work.

27

Again, given the conflicting evidence in the record, the Court must remand to permit the ALJ to clarify his acceptance of the limitations described by Dr. Schoen and apparent rejection of those described by Dr. Aquilino and Dr. Klein.  Such clarification is particularly necessary in light of the vocational expert's testimony that a person with the limitations described by Dr. Aquilino and Dr. Klein could <u>not</u> return to sedentary work.[8]

### 4.    Plaintiff's Other Arguments

In light of the necessity for remand, the Court need only summarily address Plaintiff's other arguments.  Plaintiff argues that the ALJ erred in giving little weight to Dr. Klein's evaluation and failed to credit Dr. Aquilino's evaluation as Plaintiff's treating physician.  On remand, the ALJ will have

---

[8] It may be true, as suggested by Defendant, that sedentary work would permit Plaintiff to take the three ten to fifteen minute breaks said necessary by Dr. Aquilino, and to sit for no longer than three hours, as reported by Dr. Klein.  Of course, this was not the conclusion of the vocational expert, who testified at Plaintiff's hearing that someone with these limitations could not return to sedentary work.  R. at 384-86. The ALJ can address this issue on remand.

The ALJ can also address Defendant's argument that, even if Plaintiff could not perform the functional requirements of her past work, Plaintiff would be capable of performing the functional demands as would generally be required by a similar position.  The Court simply notes, again, that the vocational expert found that a person with the limitations described by Dr. Aquilino and Dr. Klein could not be successful at any other job in the regional or national economy.  R. at 384-86.

the opportunity to weigh the findings of both doctors in light
of the record evidence.

Plaintiff next contends that the ALJ erred in determining
that Plaintiff was not disabled based on her failure to follow
prescribed medical treatment, arguing that her failure was
caused by Plaintiff's economic condition.  SSR 82-59 states that
"failure to follow prescribed treatment will be generally
accepted as justifiable and, therefore, such failure would not
preclude a finding or disability" where "[t]he individual is
unable to afford prescribed treatment which he or she is willing
to accept, but for which free community resources are
unavailable."  1982 WL 31384, at *3-4.  Notations in Plaintiff's
treatment records support the ALJ's finding that the Plaintiff
failed to take medication, but also indicate that cost was an
issue for Plaintiff.  See R. at 273-74, 276-78, 282.  Plaintiff
also testified that she lacked health insurance.  R. at 373.

The ALJ does not discuss Plaintiff's economic situation and
its impact on her prescribed treatment.[9]  See R. at 26.  He
simply notes Plaintiff's poor diet, that she was not taking
insulin as ordered and cites 20 CFR § 404.1530(b), which states
"[i]f you do not follow the prescribed treatment without a good

---

[9] The ALJ did consider Plaintiff's medical costs when he
determined that she had not engaged in substantial gainful
activity ("SGA") since her alleged onset date.  See R. at 21.
The ALJ noted in particular that Plaintiff's earnings in 2006
were below the SGA level after medical costs were deducted.

reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits." It is unclear from the ALJ's opinion, however, whether he considered Plaintiff's failure to take her medication as a reason to deny Plaintiff disability benefits. On remand, the ALJ can clarify this issue and address Plaintiff's argument that she was unable to afford her medication.

## III. Conclusion

The Court must remand this matter to permit the ALJ to clarify his step four findings in light of conflicting evidence in the record. An appropriate Order will issue this date.


Dated: August 18, 2010            s/Renée Marie Bumb
                                  RENÉE MARIE BUMB
                                  UNITED STATES DISTRICT JUDGE